# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TYRONE FULLER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO.: 07-CV-2341 |
| ) | |
| DONALD HULICK, Warden ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Tyrone Fuller filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, in which he complains that the state trial court erred by finding him to be death penalty eligible without a specific jury determination of his intent to kill as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that the state appellate court erred in holding that his guilty plea amounted to a waiver of his right to challenge his sentence under *Apprendi*. Fuller argues that the appellate court's decision upholding the trial court's finding that Fuller is death penalty eligible (i) was based on an unreasonable determination of the facts in light of the evidence presented in the trial court proceedings; and (ii) was contrary to, and involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Respondent Warden Donald Hulick moves to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1)(A). For the following reasons, the Court grants Respondent's motion and dismisses Fuller's habeas petition.

**I.     Background**

On December 1, 1999, Fuller pleaded guilty in the Circuit Court of Cook County, Illinois, to three counts of first degree murder, one count of attempted murder, and one count of armed

robbery in connection with the December 18, 1997 shooting of jewelry store owner Marc Feldman during a robbery of Feldman's store.[1] The first degree murder counts alleged that (i) Fuller shot the victim with the intent to kill him; (ii) Fuller shot the victim knowing that his act created a strong probability of death; and (iii) Fuller shot and killed the victim while committing a forcible felony (armed robbery). Following sentencing hearings, a jury found that Fuller was death-penalty eligible under 720 ILCS 5/9-1(b)(6) based on the statutory aggravating factor that the murder was committed in the course of an armed robbery. No mitigating factors were found, and the trial court sentenced Fuller to death.

On February 22, 2002, the Illinois Supreme Court vacated Fuller's death sentence on the ground that the trial court's jury instructions as to the mental state required to establish death-penalty eligibility based on felony murder were erroneous. The Supreme Court also held that Fuller's convictions for knowing and felony murder should be merged into the most culpable murder count, intentional murder. The case was remanded to the trial court for a new sentencing hearing.

In January 2003, prior to the new sentencing hearing, Illinois Governor George Ryan granted clemency to all Illinois defendants on death row, including those who were not then under sentence. Thus, any potential death sentence against Fuller was commuted to a sentence of natural life without parole.

On August 4, 2004, on remand from the Illinois Supreme Court, the trial court, without a jury, sentenced Fuller to natural life, based on the prosecution's argument that he was death-

---

[1] The facts and procedural history of Fuller's initial conviction, sentencing, and appeal to the Illinois Supreme Court are taken from *People v. Fuller*, 105 Ill. 2d 308 (2002). See Resp. Ex. A.

penalty eligible.² On appeal, Fuller argued that, under *Apprendi*, he was entitled to a jury determination of death-penalty eligibility in the remanded sentencing action. On October 25, 2005, the Illinois Appellate Court affirmed the life sentence, holding that Fuller waived his sentencing challenge by pleading guilty to the offenses with full knowledge of the sentences that could be imposed.

Fuller filed a petition for leave to appeal (PLA) on November 16, 2005 (Resp. Ex. E) that was denied by the Supreme Court of Illinois on January 25, 2006 (Resp. Ex. F). Therefore, Fuller has exhausted his state court remedies on direct appeal.³

On April 27, 2007, Fuller filed his petition for writ of habeas corpus, asking this Court to vacate his sentence and remand the cause for a new sentencing hearing. Fuller argues that the finding that he was death-penalty eligible, and therefore eligible for a sentence of natural life without parole, required a jury determination beyond a reasonable doubt that he acted with the requisite intent to kill during an armed robbery, despite his plea of guilty to intentional murder.

## II. Discussion

In the motion now before the Court, Respondent Hulick moves to dismiss, with prejudice, Fuller's petition for writ of habeas corpus as untimely under the Antiterrorism and Effective

---

² The procedural history of Fuller's remanded sentencing proceedings and appeal are taken from the Appellate Court's Rule 23 Order. See Resp. Ex. D.

³ Fuller also has exhausted the remedies available through the state post-conviction petition process. Following his original trial court conviction and sentencing hearing, Fuller filed a post-conviction petition on January 12, 2001, that was dismissed by the trial court on October 1, 2002. On March 21, 2003, the trial court denied Fuller's motion to reinstate his post-conviction petition, and he did not appeal. Following the remanded sentencing proceedings, Fuller filed a post-conviction petition on September 13, 2007, well beyond the deadline of October 24, 2006. The state trial court dismissed that petition on January 4, 2008. See DE 47 (Notice of Ruling on Petitioner's Petition for State Postconviction Relief, Jan. 8, 2008).

Death Penalty Act (AEDPA). Hulick argues that Fuller's habeas petition, filed on April 27, 2007, was due on or before April 25, 2007, under AEDPA's one-year statute of limitations. Hulick further argues that equitable tolling of the AEDPA statute of limitations is unwarranted because no extraordinary circumstances beyond Fuller's control prevented him from filing his petition in a timely manner and because Fuller did not exercise reasonable diligence in pursuing federal habeas relief.

### A. Statute of Limitations for Habeas Petitions under AEDPA

AEDPA provides that:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of —

(A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In this case, Respondent argues, and Fuller does not contest, that the one-year AEDPA statutory period began to run when the state court judgment became final pursuant 28 U.S.C. § 2244(d)(1)(A). The Illinois Supreme Court's judgment of January 25, 2006, which denied Fuller's PLA, became final on April 25, 2006, upon the expiration of Fuller's time for filing a petition for *certiorari* to the United States Supreme Court, ninety days

after judgment. See *Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). Therefore, the one-year limitations period expired on April 25, 2007.[4]

Fuller concedes that his habeas petition of April 27, 2007, was filed two days beyond the statutory deadline. However, Fuller asks this Court to equitably toll the statute of limitations and deny Respondent's motion to dismiss, because the untimely filing was the result of "egregious misconduct" by Fuller's attorney that was beyond Fuller's knowledge and control. In the alternative, Fuller asks this Court to order an evidentiary hearing and/or discovery in order to allow the parties to flesh out factual issues associated with the untimely filing that may warrant equitable tolling.

### B.    Equitable Tolling

In general, under the doctrine of equitable tolling, a court may toll the statute of limitations to benefit an otherwise untimely litigant if the litigant can establish that (i) he had been pursuing his rights diligently and (ii) some extraordinary circumstance prevented timely action. *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005). The Seventh Circuit has held that equitable tolling may be applied to 28 U.S.C. §2244(d) "when extraordinary circumstances outside of the petitioner's control prevent timely filing of the habeas petition." *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007).

Fuller argues that such extraordinary circumstances are present in his case because Fuller's previous attorney, assigned to him by the Illinois Office of the State Appellate Defender,

---

[4] AEDPA also provides that the one-year statute of limitations for filing a habeas petition may be tolled during "the time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). However, the one-year statutory limitation in this case is unaffected by the tolling provisions of 28 U.S.C § 2244(d)(2) because Fuller never had a state post-conviction petition pending between April 25, 2006, and April 25, 2007. Petitioner's post-conviction petition following his original trial was dismissed on October 1, 2002, well before the AEDPA statutory period began, and his post-conviction petition following the trial on remand was untimely filed on September 13, 2007, well after the AEDPA statutory period ended.

5

"committed a fraud on his client, his colleagues, and his supervisors by knowingly ignoring [the state post-conviction and federal habeas corpus] filing deadlines and then concealing his blunder through lies and misrepresentation." Pet'r Resp. at 10. Fuller's previous attorney, Christopher Boeder, was informed that the federal habeas filing was due on April 24, 2007.[5] Yet, despite repeated letters from Fuller (in prison) to Boeder inquiring about the status of the petition and expressing concern about the upcoming deadline, Boeder failed to file until April 27, 2007, two days after the filing deadline.

For example, on February 14, 2007 (after Boeder had already missed the filing deadline for Fuller's state post-conviction petition), Fuller wrote to Boeder: "Look, I'm just making sure you don't slip again * * * * Take care and hurry up and let me know what's what because March is the deadline for my life." Pet'r Resp. Ex. L. On April 8, 2007, Fuller again wrote to Boeder:

> The last time we talked you said that this month was the deadline for filing what needed to be filed and that you would come down to see me before that. So I'm just making sure we don't miss another deadline. I can't call because I can't get to a phone in the morning. So could you please let me know something please. Thank you."

Pet'r Resp. Ex. M. Finally, on April 19, 2007, Fuller wrote a letter to deputy defender Anna Ahronheim, Boeder's superior:

> Concerning: The deadline for filing my [federal habeas petition] * * * * I haven't been able to call, I was able to reach Mr. Boeder in March and he said that the deadline was in April and that he'd be to see me this month before the deadline * * * * I just don't want things to go the way they did about my [post-conviction petition]. I've wrote Mr. Boeder and I haven't heard from him. So could you please make sure things don't go "bad" and could someone let me know something please. Thank you so much and God Bless.

Pet'r Resp. Ex. N.

---

[5] Both parties agree that the actual filing deadline was April 25, 2007.

Boeder failed to (i) respond to some of Fuller's correspondence, (ii) send him a copy of the habeas petition once it was filed, and (iii) notify him when the motion to dismiss was filed. Furthermore, both before and after the April 25, 2007 deadline, Boeder effectively represented to his supervisors, colleagues, and Fuller that the habeas petition would be and had been filed on time. Pet'r Resp. Ex. E ¶17; Ex. J ¶11; Ex. P ¶15; Ex. T ¶¶10-15. Boeder's superiors did not discover that the habeas petition was untimely until September 19, 2007, more than three months after the instant motion to dismiss was filed. The Office of the Appellate Defender found that "Mr. Boeder's deception regarding whether and when he had filed documents on behalf of Mr. Fuller was grounds for discharge." Pet'r's Resp. Ex. E ¶22. As a result, Boeder resigned upon request effective October 5, 2007.

In arguing that equitable tolling should apply in this case, Fuller asks this Court to consider the decisions of several federal courts of appeals that have recognized serious attorney misconduct as an extraordinary circumstance warranting equitable tolling. For example, in *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002), the Fifth Circuit held that an allegation that "[a habeas petitioner] was deceived by his attorney into believing that a timely [habeas] motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations." Likewise, the Second Circuit has held that an attorney's actions in failing to file a habeas petition when requested to do so by his client were "far enough outside the range of behavior that reasonably could be expected by a client that they may be considered extraordinary" so as to justify equitable tolling. *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). The Third, Eighth, Ninth, and Tenth Circuits have reached similar results. See *Nara v. Frank*, 264 F.3d 310, 320, (3d Cir. 2001) (acknowledging that habeas counsel's misrepresentations about filing status

may be grounds for equitable tolling); *United States v. Martin*, 408 F.3d 1089, 1095 (8th Cir. 2005) (holding that habeas counsel's affirmative misrepresentations, failure to communicate with his client, and failure to return the client's papers constitute "egregious attorney misconduct that may excuse an untimely filing"); *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) (holding that habeas counsel's failure to file a petition or return client files before the deadline amounted to attorney misconduct warranting equitable tolling); *Fleming v. Evans*, 480 F.3d 1249, 1256 (10th Cir. 2007) (holding that habeas counsel who "deceived [petitioner] into believing that he was actively pursuing [petitioner's] legal remedies when, in fact, he was not" may have engaged in "sufficiently egregious misconduct" to warrant equitable tolling).

However, this Court is bound by the law of the Seventh Circuit, which has stressed that "equitable tolling is rarely granted." *Lo*, 506 F.3d at 576. The Seventh Circuit consistently has refused to apply equitable tolling to habeas petitions when a petitioner's attorney failed to make a timely filing. See *Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) (holding that negligence by habeas counsel who failed to file a timely petition, after warning petitioner that he had over twenty cases in front of petitioner's, did not warrant equitable tolling); *Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004) (holding that equitable tolling was not warranted when habeas counsel "bungled the job" by failing to express mail a petition so that it arrived on time); *Modrowski v. Mote*, 322 F.3d 965 (7th Cir 2003) (holding that attorney incapacity due to illness did not warrant equitable tolling); *Taliani v. Chrans*, 189 F.3d 597 (7th Cir. 1999) (holding that habeas counsel's mistake in calculating filing deadline did not warrant equitable tolling).

Fuller contends that his case is distinguishable from Seventh Circuit precedent because his untimely filing "was not a result of miscalculation or mere negligence but rather as a result of attorney fraud and egregious misconduct." Pet'r Resp. at 11. Fuller urges this Court to adopt

the approach taken by other circuits that have found that such "egregious misconduct" is an extraordinary circumstance that may justify equitable tolling.

It is true that Boeder's actions rise to a more reckless level than most, if not all, of the attorney actions previously considered by the Seventh Circuit in equitable tolling cases. Boeder did not merely miss a deadline due to miscalculation, misjudgment, incapacity, or illness. Rather, despite being notified of Fuller's upcoming deadline by his colleagues and by Fuller himself, Boeder inexplicably failed even to complete a draft of the petition for review by a colleague until after the deadline had passed. Furthermore, Boeder concealed the untimeliness of his filing, which was not discovered by his colleagues until several months after the habeas deadline, long after the Respondent's motion to dismiss had been filed. Boeder knowingly disregarded a high risk that his actions would cause harm to Fuller by depriving him of a chance to obtain habeas relief.

Nonetheless, this Court is bound by the Seventh Circuit, which has made clear that "attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client, and thus is not a circumstance beyond a petitioner's control that might excuse an untimely petition." *Powell*, 415 F.3d 722, 727 (7th Cir. 2005) (quoting *Modrowski*, 322 F.3d at 968) (internal quotations omitted). Furthermore, in *Modrowski*, the Seventh Circuit expressly "rejected the reasoning" behind cases like the Fifth Circuit's *Wynn*, which held that egregious attorney misconduct "outside the bounds of ordinary attorney negligence" justified equitable tolling. *Modrowski*, 322 F.3d at 968. Under Seventh Circuit law, because "lawyers are agents" and "[t]heir acts (good and bad alike) are attributed to the clients they represent," even willful attorney misconduct is not considered to "interfere[] with [petitioner's] ability to pursue collateral relief in a timely fashion." *Johnson v. McBride*, 381 F.3d at 589. And, under that

9

view, regardless of the actions of their attorneys, petitioners like Fuller "bear ultimate responsibility for their filings, even if that means preparing duplicative petitions: petitioners, 'whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands'" in order to meet relevant deadlines. *Modrowski*, 322 F.3d at 968 (quoting *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001)).

Because application of the first prong of the equitable tolling analysis – whether the petitioner faced extraordinary circumstances outside his control that prevented timely filing – is dispositive in this case under Seventh Circuit precedent, the Court need not decide whether Fuller exercised reasonable diligence in pursuing his rights to satisfy the second prong. However, the Court notes Fuller's repeated attempts to contact Boeder through letters, phone calls from prison, and requests to his mother asking her to contact the Office of the Appellate Defender on his behalf. In view of Fuller's confinement and the representations of counsel, it appears that Fuller did all that he could to "vigilantly oversee" the actions of his counsel. But both the Seventh Circuit and the Supreme Court have held that "all prisoners, including those sentenced to death, are responsible for their own legal affairs on collateral attack and cannot * * * obtain relief from the shortcomings of their counsel." *Johnson*, 381 F.3d at 590; see also *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (enforcing default notwithstanding the Court's recognition that counsel was to blame for failure to exhaust available state remedies that foreclosed collateral review in federal court).

In sum, under Seventh Circuit case law, the untimeliness of Fuller's habeas petition must be attributed to Fuller himself, despite attorney Boeder's abysmal representation of Fuller during the post-conviction process. In other words, Boeder's actions cannot be considered an

extraordinary circumstance beyond Fuller's control that justifies application of equitable tolling principles. For all of those reasons, the Court must grant the motion to dismiss.[6]

### III.     Conclusion

In light of Seventh Circuit precedent that precludes the application of equitable tolling in this case, the Court grants Respondent's motion to dismiss Fuller's habeas petition as time-barred under 28 U.S.C. §2244(d)(1). This Court also denies Fuller's alternative request for an evidentiary hearing or discovery to flesh out the factual issues pertaining to the late filing. Further evidence of attorney misconduct, even if willful, would not change this Court's holding. Under the Seventh Circuit's decisions, attorney misconduct simply is not a circumstance that can justify equitable tolling on Fuller's behalf.

Dated:  August 25, 2008              _____
                                     Robert M. Dow, Jr.
                                     United States District Judge

---

[6] The Court recognizes that this result may seem harsh and that a different result may have obtained under the facts of this case in a different circuit. But the Court finds the law in this circuit to be unambiguous and unequivocal, and notes that any change in that law must come from the court of appeals itself or the Supreme Court.

11